**TERMAN FOODS, INC.,**
Plaintiff-Appellee,

v.

**OMEGA LINES, Et. Al.,**
Defendants-Appellants.

No. 82–5157
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

June 20, 1983.

Walter F. McQuade, George & McQuade, Daniel C. George, North Miami, Fla., for defendants-appellants.

William B. Milliken, Miami, Fla., for plaintiff-appellee.

Before RONEY, VANCE and ANDER-SON, Circuit Judges.

PER CURIAM:

The major question presented by this appeal is whether the trial court erroneously imposed liability under the Carriage of Goods by Sea Act, 46 U.S.C.A. §§ 1300–1315, on the defendant carrier for the spoilage of a shipment of chicken. We affirm the decision as to liability and damages. We reverse that portion of the order entering judgment against the vessel because it was never attached, and therefore the court had no jurisdiction over it.

Terman Foods, Inc., contracted with Omega Lines to ship 6,579 cartons of frozen chicken backs from Miami to Bridgeport, Barbados. Most of the chicken was loaded without incident. Omega informed Terman that one load arrived in a slightly warmed condition. Even though a Terman employee directed that the chicken not be loaded until he could arrange for it to be put in a

blast freezer to lower the temperature, Omega loaded the chicken and gave it a clean bill of lading. Ed Hays, hired by Omega to survey the chicken as it was loaded on the vessel, found the chicken to be in generally good condition, with no mold, offensive odor, or other signs of decay. He detected that part of one load was warm, over 20 degrees Fahrenheit, and much of the chicken had a yellow or white appearance and was slightly freezer burned, but he found it was fit for human consumption. Hays also observed ice and blood had built up on some of the cartons in which the chicken was packed. During his inspection of the ship's refrigerated cargo spaces, Hays found the chicken stored in a manner normal for frozen foods but neither recorded the temperature in the hold nor inspected the refrigeration equipment. Omega issued a clean bill of lading for the cargo, which specified the chicken was to be kept at a temperature between zero to five degrees Fahrenheit throughout the voyage.

The vessel first sailed to Trinidad, where a separate load of frozen food was off-loaded in good condition. Upon the ship's arrival in Barbados, problems were discovered with the chicken during the course of its discharge. Omega requested a survey of the chicken. When the surveyors arrived, they found the chicken on the dock had begun to thaw, had an offensive odor, and was discolored. The surveyor who inspected the chicken still in the hold found that although some of it was frozen, much of it was also discolored, all of it had some odor, cartons of chicken were scattered all over the hold and most of the chicken was exposed and appeared to have thawed and been refrozen. The second surveyor, who never went into the hold, detected a strong odor emanating from the hatch, found many of the cartons were open as they were taken off the ship, and noticed the chicken smelled and was discolored. A senior public health inspector for the Barbados government inspected the entire load, both on- and off-board, finding it decomposed and smelly. He condemned it as unfit for human consumption and ordered it to be dumped at sea. He took similar steps with

regard to a load of sausage that had been stowed in a separate locker in the same hatch as the chicken.

After a non-jury trial, the district court entered judgment for the plaintiff for the full invoice price, plus interest, expenses, and costs.

■ Under the Carriage of Goods by Sea Act (COGSA), 46 U.S.C.A. §§ 1300–1315, which governs this dispute, the plaintiff establishes a prima facie case by proving the carrier received the cargo in good condition but unloaded it in a damaged condition at its destination. *Associated Metals & Minerals Corp. v. M/V Rupert De Larrinaga,* 581 F.2d 100, 101 (5th Cir.1978). A clean bill of lading is prima facie evidence that the carrier received the goods it describes. 46 U.S.C.A. § 1303(4). It creates a rebuttable presumption the goods were delivered to the carrier in good condition and thus satisfies that element of the plaintiff's prima facie case. *Emmco Insurance Co. v. Wallenius Caribbean Line, S.A.,* 492 F.2d 508, 512–13 (5th Cir.1974).

■ Once the shipper presents a prima facie case, the burden shifts to the carrier to prove either that it exercised due diligence to prevent the damage by properly handling, stowing, and caring for the cargo in a seaworthy ship, 46 U.S.C.A. §§ 1303(1) and (2), or that the harm resulted from one of the excepted causes listed in 46 U.S.C.A. § 1304(2). *Blasser Bros. v. Northern Pan-American Line,* 628 F.2d 376, 381 (5th Cir. 1980). *See generally* 2A *Benedict on Admiralty* § 56 (7th ed. 1983). Only if the carrier is able to rebut the shipper's prima facie case by proving that it falls within one of the exceptions does the burden of proof then shift back to the shipper to show the carrier's negligence was, at the least, a concurrent cause of the loss. *United States v. Lykes Bros. Steamship Co.,* 511 F.2d 218, 224 (5th Cir.1975).

■ The district court found that Omega received the 6,759 cartons of chicken in good condition but the cargo arrived in Barbados completely damaged and unfit for human consumption. The court also found

Omega presented no proof to establish that it was not liable for any part of the damage to the cargo. The court therefore concluded Terman established a prima facie case of liability unrebutted by Omega. This Court may not set aside these findings unless they are clearly erroneous. *McAllister v. United States,* 348 U.S. 19, 20, 75 S.Ct. 6, 7, 99 L.Ed. 20 (1954); *Chaney v. City of Galveston,* 368 F.2d 774, 776 (5th Cir.1966).

■ Omega argues it proved due diligence in making the ship seaworthy, 46 U.S.C.A. § 1303(1)–(2), as evidenced by a survey of the ship and certification of its refrigeration system just two months before the voyage in question. There was also evidence, however, by its own surveyor, that Omega neither recorded the temperature in the hold nor reinspected the refrigeration equipment at the time the chicken cargo was loaded. The contract of carriage called for the temperature to be maintained at zero to five degrees throughout. The refrigeration logs reflected the temperatures in the lower tween deck ranged from six to fifteen degrees for the entire voyage and those in the upper tween deck ranged from five to fourteen degrees for the first nine days of the 12-day voyage.

46 U.S.C.A. § 1304(2)(q) imposes the burden of persuasion on a defendant to show that it was not at fault in contributing to the loss or damage. G. Gilmore & C. Black, *The Law of Admiralty* § 3–37 at 168 & n. 91 (2d ed. 1975) (citing [*Waterman S.S. Corp. v. United States S.R. & M. Co.*] *The West Kyska,* 155 F.2d 687 (5th Cir.), *cert. denied,* 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656 (1946)). Omega offered the testimony of neither its captain nor any of the crew. Its president testified the chicken appeared to be in good order, but he observed only about 90 minutes of the unloading and inspected none of the chicken.

Omega relies on *Caemint Food, Inc. v. Brasileiro,* 647 F.2d 347 (2d Cir.1981), to lessen the thrust of plaintiff's prima facie case, but there the carrier observed only the outer packaging, not the cargo contained therein. 647 F.2d at 354. Given the testimony of the surveyors who inspected the cargo as it was both loaded and discharged as well as that of the health inspector, the district court's determination as to liability was not clearly erroneous.

As to damages, Omega claims the district court erred in awarding plaintiff the full amount of the invoice, which included $5,000 profit, because plaintiff completed its contract with the purchaser using a different vessel, making the $5,000 profit on the sale.

■ The measure of damages for lost cargo is the market value of the cargo in sound condition at its destination less its market value in its damaged state. *Holden v. S.S. Kendall Fish,* 395 F.2d 910 (5th Cir. 1968). Courts use the invoice price when the fair market value is uncertain or not proved. *Emmco Insurance Co. v. Wallenius Caribbean Line, S.A.,* 492 F.2d 508, 514 (5th Cir.1974). There was no evidence that plaintiff received any payment for this particular shipment, and its marine insurance carrier denied its claim. The award of the invoice price was correct.

■ The district court awarded the costs incurred by Terman to travel to Barbados to investigate the loss. Omega argues this was in error because the plaintiff gleaned no useful information from the trip. Omega presented no evidence to contradict the court's finding that Terman incurred the expenses to ascertain the nature and extent of the loss and properly documented them. *See Matter of Ta Chi Navigation (Panama) Corp., S.A.,* 513 F.Supp. 148, 155 (E.D.La. 1981).

■ As a final matter, Terman concedes that the M/V "Omega I" was never brought before the court, and therefore the district court erred in rendering final judgment against the vessel. We accordingly reverse that part of the final judgment entered against the vessel.

AFFIRMED IN PART, REVERSED IN PART.