**SIGRI CARBON CORPORATION, Plaintiff,**

v.

**LYKES BROTHERS STEAMSHIP CO., INC., in personam,**

and

**M/V SS DOCTOR LYKES, in rem, Defendants.**

**Civ. A. No. 84–0366–P(J).**

United States District Court, W.D. of Kentucky, Paducah Division.

March 24, 1987.

W. Scott Miller, Jr. & Stephanie R. Miller, Miller & Miller, Louisville, Ky., for plaintiff.

James G. Apple, Stites & Harbison, Louisville, Ky., for defendants.

## MEMORANDUM OPINION

JOHNSTONE, Chief Judge.

This admiralty action for cargo damage is before the Court on the parties' cross-motions for summary judgment pursuant to FED.R.CIV.P. 56. The parties agree that the action is governed by the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. Appx. §§ 1300–1315, and that the Court has jurisdiction by virtue of 28 U.S.C. §§ 1331 & 1333. After sifting the parties' arguments, the Court has determined that this matter may be disposed of upon resolution of the following question: Is a carrier liable for cargo damage caused by improper stowage performed by a stevedore who was engaged by the shipper and over whom the carrier exercised no control? The facts necessary for the resolution of this question are not in dispute.

### A. Facts

In Rotterdam, Netherlands, during January of 1983, Sigri Elektrographit Gmbh. (shipper) engaged Deka Transport (stevedore) to load and stow 150 palettes, each bearing two graphite electrodes, in a SEABEE barge owned by defendant Lykes Brothers Steamship Co., Inc. (carrier). After stowing the electrodes, the stevedore sealed the barge with heavy barge covers. The loaded barge was later delivered to the M/V SS DOCTOR LYKES (vessel), a containerized mother ship capable of carrying 38 SEABEE barges. After storage aboard the mother ship, the barge was transported to New Orleans and there turned over to Dravo Mechling, an upriver towing company, which towed it to Hickman, Kentucky for delivery to plaintiff Sigri Carbon Corpo-ration (consignee). Upon opening the barge and removing the cargo, the consignee discovered that some of the electrodes were damaged. A marine surveyor, engaged by the consignee to determine the cause and extent of the loss, concluded that the damage was the result of "improper stowage and the absence of any blocking or bracing to secure the electrodes in place within the stow."

The electrodes were shipped "free in/out stow" under a bill of lading issued at Rotterdam on January 29, 1983. The bill described the cargo as "150 pallets s.t.o. 300 pieces Carbon Furnace electrodes @ 600 x ca. 2170 mm. Grade LS2L ... 361.931 Kos." No notations were made on the bill regarding the condition of the cargo; however, the following provisions were printed on the document:

> [T]he goods ... [are] in apparent good order and condition, except as otherwise noted herein, and except where the goods or packages have been loaded in a container or SEABEE BARGE by shipper, in which case condition, nature and description are known....

> 8. WHEN CONTAINERS, vans, trailers, portable tanks, palletized units, and other packages, and SEABEE BARGES (all hereinafter referred to generally as cargo units) are not packed or loaded by Carrier, Carrier has no reasonable means of checking the quantity, weight, condition, or existence of the contents thereof.... Carrier shall have no responsibility or liability whatever for the packing, loading, securing and/or stowage of contents of such cargo units.... The shipper, whether principal or agent, the consignee, and the owner of the goods, by packing or loading the cargo unit and/or by allowing the cargo unit to be so packed or loaded, represent and warrant: (a) that the goods are properly described, marked, secured, and packed in their respective cargo units; that such cargo units are physically suitable, sound, and structurally adequate properly to contain and support the goods during handling and on the voyage....

## B. Arguments

The parties' arguments may be summarized as follows:

The consignee contends that COGSA imposed a non-delegable duty on the carrier to "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried" in the barge. 46 U.S.C. Appx. § 1303(2). The consignee further contends that provisions in the bill of lading disclaiming responsibility for the inspection and proper loading and stowing of cargo in SEABEE barges are unenforceable under 46 U.S.C. Appx. § 1303(8) which states:

> Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this Act shall be null and void and of no effect.

The carrier contends that COGSA shields it from liability for cargo damage caused by "improper stowage and the absence of any blocking or bracing to secure the electrodes in place within the stow." Section 1304(2)(i) states:

> Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from—
> (i) Act or omission of the shipper or owner of the goods, his agent or representative....

Noting that the stevedore acted as the shipper's agent and that the stevedore's negligence in loading and stowing the cargo is the agreed cause of consignee's loss, the carrier raises § 1304(2)(i) as a bar to liability for the acts or omissions of the agent stevedore. As a second defense, the carrier characterizes the SEABEE barge as a container which was loaded and sealed by the shipper, and invokes § 1304(2)(n) as a shield to responsibility for loss due to an "insufficiency of packing" inside a sealed container which it had no duty to open and inspect and which the shipper and consignee warranted to be properly packed pursuant to Paragraph 8 of the Bill of Lading.

The carrier finds a third defense in the "free in/out stow" term of the bill of lading which, it argues, placed the risk as well as the expense of loading and unloading the cargo on the shipper and consignee. The carrier seeks a final refuge in Paragraph 8 of the bill which requires the shipper and consignee to indemnify the carrier and hold it harmless for any damage to cargo. In resolving this matter, the Court has focused on the carrier's first and third defenses.

## C. Analysis

■ To establish a prima facie case of carrier liability for cargo damage under COGSA, a plaintiff must prove two things: 1) the carrier received the cargo in good condition, and 2) the cargo arrived at its destination in damaged condition. *Terman Foods, Inc. v. Omega Lines,* 707 F.2d 1225, 1227 (11th Cir.1983); *Associated Metals, Etc. v. M/V RUPERT DE LARRI-NAGA,* 581 F.2d 100, 101 (5th Cir.1978). A plaintiff who succeeds in establishing that its goods were damaged while in the carrier's custody is entitled to a recovery unless the carrier brings itself within one of the exceptions to liability set forth in 46 U.S.C. Appx. § 1304. *Caemint Food, Inc. v. Brasileiro,* 647 F.2d 347, 352 (2d Cir.1981). For this opinion, the Court will assume, without analysis, that the consignee has established a prima facie case of carrier liability and will proceed to an analysis of the dispositive issue of the case; namely, whether a carrier is liable for cargo damage caused by improper stowage performed by a stevedore who was engaged by the shipper and over whom the carrier exercised no control.

■ As mentioned earlier, the electrodes were shipped "free in/out stow" (FIOS) in accordance with a notation typed on the face of the bill of lading. A FIOS term "simply means that the vessel does not pay for the costs of loading, stowage or discharge." *Nitram, Inc. v. Cretan Life,* 599 F.2d 1359, 1368 n. 18 (5th Cir.1979) (citations omitted). Whether the term allocates the risks as well as the costs of loading, stowing, and discharging cargo, however, depends upon who controls the actual per-

formance of those activities. *Sumitomo Corp. of America v. M/V SIE KIM*, 632 F.Supp. 824, 837–39 (S.D.N.Y.1985). In the instant case, the carrier, who played no role in loading the barge or in stowing the electrodes therein, argues that the FIOS term shifted the risk of damage due to improper stowage to the party who engaged the stevedore and controlled its performance. The Court agrees.

The consignee argues that the FIOS term in the bill of lading was without effect. The International Maritime Dictionary defines "free in/out" as a term "by which the owner *who charters* the ship is responsible for all the costs of ship management with the exception of loading and discharging cargo." *As paraphrased in Atlas Assurance Company, Ltd. v. Harper Robinson Shipping Co.,* 508 F.2d 1381, 1383 n. 2 (9th Cir.1975) (emphasis supplied by consignee). The consignee reads this definition to nullify the FIOS term in the instant case, for the vessel was operated by its owner as a common carrier and was not under charter. A review of cases in which "free in/out" terms were recognized despite the absence of a charter party leads the Court to disagree.

■ In *Waterman S.S. Corp. v. United States*, 595 F.2d 91 (2d Cir.1979), the Military Sealift Command entered into a written contract for the carriage of military equipment on a "free in/out" basis "designed to compensate the carrier for transportation services only ... on the assumption that the carrier would not be providing any stevedore services." *Id.* at 92. The shipper chartered no vessels; rather, as in the instant case the shipper's cargo was stowed in LASH barges which in turn were loaded on a mother ship. Although the shipper, by payment of an agreed minimum freight charge, could secure exclusive use of the barges and of the mother ship, the carrier was otherwise free to operate the vessel as a common carrier. The Second Circuit enforced the contract despite the absence of a charter party, thereby suggesting that FIOS terms may be used to allocate costs and responsibilities between common carriers and shippers as well as between owners and charterers. *See also Sumitomo, supra,* ("free in/liner out" term in bills of lading given full effect). Furthermore, the use of FIOS and other similar terms in bills of lading is now a common and commercially acceptable practice, *id.,* and in the absence of unequal bargaining power should be enforced. In the instant case, it is noteworthy that the FIOS term was typed-in rather then printed on the bill of lading, suggesting that the parties bargained for the term as an agreed allocation of their financial and cargo handling responsibilities.

■ The inclusion of a FIOS term in a bill of lading should not be disregarded as inconsistent with COGSA so long as it is understood that the term in no way relieves the carrier of responsibility for its own acts or for the acts of others under its control. *Atlas Assurance Co.,* 508 F.2d at 1389, *analyzed in Sumitomo,* 632 F.Supp at 837. Whether that term also relieves the carrier of responsibility for the shipper's acts, however, is the central concern of this opinion. The consignee would eliminate the possibility of contractual risk shifting under COGSA on the grounds that it is inconsistent with the carrier's *non-delegable* duty to "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." 46 U.S.C. Appx. § 1303(2). Although several courts "have suggested somewhat casually in dicta that carriers have a non-delegable duty to stow cargo," *Sumitomo,* 632 F.Supp. at 836 (citations omitted), the Court can find no support for the proposition that a carrier remains responsible for cargo damage caused by improper stowage performed by persons engaged by the shipper and over whom the carrier exercises no control.

Several courts have relied on *Nichimen Company v. M.V. FARLAND*, 462 F.2d 319 (2d Cir.1972), for the proposition that a carrier's duty to properly stow cargo is non-delegable. *See Dow Chemical Pacific v. Rascator Maritime S.A.,* 594 F.Supp. 1490, 1496 (S.D.N.Y.1984); *Hojgaard & Schultz v. Transamerican S.S. Corp.,* 590 F.Supp. 916, 922 (S.D.N.Y.1984) *also citing*

*Miller Yacht Sales v. M.V. VISHVA SHO-BHA,* 494 F.Supp. 1005, 1013–14 (S.D.N.Y. 1980) (correctly noting that a carrier cannot discharge its duty to cargo by placing it in the hands of an independent contractor). In *Nichimen,* the court, without analysis and citing no authority, stated that a carrier's duty under § 1303(2) to properly load and stow a shipper's goods is "non-delegable". 462 F.2d at 330. In later analysis, however, the court more accurately noted that *"absent any special provision or circumstance,* the duty to load, stow, and discharge cargo—and the consequences for failing to do so properly—fall upon the ship and her owners." *Id.* (citations omitted, emphasis added). Another source cited for the principle of non-delegability is *Agrico Chemical Co. v. S/S ATLANTIC FOREST,* 620 F.2d 487, 889 (5th Cir.1980), *aff'g* 459 F.Supp. 638 (E.D.La.1978), *cited in Westinghouse Electric Corp. v. M/V LESLIE LYKES,* 734 F.2d 199, 209 (2d Cir. 1984). As in *Nichimen,* the *Agrico* lineage cites no authority for non-delegability, but cites authority for the proposition that a "carrier is liable for any negligence of those parties *into whose hands it has placed the goods,* whether the parties are servants, agents, or independent contractors." 459 F.Supp. at 647 (emphasis added), *citing David Crystal, Inc. v. Cunard S.S. Company,* 339 F.2d 295, 298 (2d Cir. 1964) and *Interstate Steel Corp. v. S.S. CRYSTAL GEM,* 317 F.Supp. 112 (S.D.N.Y.1970); *cf. Fabbri Co. v. Universal Shipping Corp.,* 310 F.Supp. 964, 968 (court described a carrier's duty to care for cargo as "nondelegable" in a case in which the carrier entrusted the shipper's cargo to the care of a third party while awaiting delivery to the consignee).

The consignee relies on *United States v. Lykes Bros. Steamship Co., Inc.,* 511 F.2d 218 (5th Cir.1975), to support its assertion that the carrier's responsibility for the proper stowage of the electrodes was absolutely nondelegable. In its opinion, the Fifth Circuit wrote that

> COGSA § 3(2) ... obligates Carrier to "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." *There is nothing in the statute which relieves that obligation.* COGSA § 4 ... enumerates various instances in which carriers are not liable to their shippers, *but none of them excuses the carrier from the duty imposed by § 3.*

*Id.* at 224 (footnote omitted, emphasis added). As in *Nichimen,* the court's assertion is supported by neither authority nor analysis. Rather, it is stated as the predicate for the court's ruling that a shipper's failure to establish a prima facie case of carrier liability under COGSA does not warrant dismissal of the shipper's complaint when the carrier knew that the cargo, if not properly tended and periodically inspected, would be subject to infestation by insects. The Court must turn elsewhere for a thoughtful analysis of non-delegable duties under COGSA.

When directly addressing a carrier's responsibility for stowage performed by a shipper, leading authorities agree that the carrier is protected:

> Stowage is the responsibility of the carrier.... The carrier is protected, however, if the shipper does the stowage and if the stowage is improper and causes damage to that cargo. If a claim is made by the shipper, the carrier may set up the shipper's negligence as a valid defense under art. 4(2) [46 U.S.C. § 1303(2)], which reads: "Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from: (i) Act or omission of the shipper or the owner of the goods, his agent or representative."

TETLEY, MARINE CARGO CLAIMS 264 (2d ed. 19xx); *see also* 2A BENEDICT ON ADMIRALTY § 94 (6th Ed.1977). A thorough judicial analysis of this exception to a carrier's so-called non-delegable duty to stow cargo is found in *Sumitomo Corp. of America v. M/V SIE KIM,* 632 F.Supp. 824, 836–839 (S.D.N.Y.1985).

In *Sumitomo,* the court absolved a carrier of responsibility for cargo damage caused by improper stowage performed by a shipper pursuant to a "free in/liner out" term in bills of lading. After an analysis of leading cases, the court concluded that

the language of 46 U.S.C. § 1303 seems most properly interpreted not as imposing a genuine non-delegable duty to load and stow, but rather as mandating that carriers remain liable for their negligence (or the negligence of their agents) in loading and stowage so long as they in fact control those processes.

*Id.* at 837. The court found support for its conclusion in COGSA:

Section 1303 of COGSA is entitled "responsibilities and liabilities of carrier and ship." The title of section 1302, however, is "duties and rights of the carrier." In section 1302, there is no statement that a carrier "must stow and load the cargo." Such a statement would be meaningless, in view of the explicit provision in section 1304 that a carrier is exonerated from liability for cargo damage caused "without actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier." Instead, the statute simply says that *"in relation to* the loading, handling, stowage ... of such goods" the carrier "shall be subject to the responsibilities and liabilities *and entitled to the rights and immunities* set forth in sections 1303 and 1304 of this title" (emphasis supplied). 46 U.S.C. § 1302. Further, 46 U.S.C. § 1301 defines the term "contract of carriage" to cover bills of lading "from the moment at which each bill of lading or similar document of title regulates the relations between a carrier and a holder of the same." Reading together sections 1301–1304, one may conclude that though carriers may not limit by contract their liability for negligence in the services they provide through their employees or agents, they may, by a valid contract with the owner of the goods, limit the services they agree to provide.

*Id.* at 837. The Court adopts the foregoing analysis, embraces its conclusion that a carrier's duty to properly and carefully load and stow cargo under § 1303(2) is not genuinely non-delegable, and holds that a carrier is not responsible for the consequences of stowage performed by persons engaged by a shipper pursuant to a FIOS term in a bill of lading over whom the carrier exercises no control. (Resolution of this case does not require consideration of the separate issue of a carrier's duty to properly keep, care for, and discharge cargo after it has been stowed by a shipper.)

In the instant case, the parties agree that the shipper, in accordance with the FIOS term in the bill of lading, engaged a stevedore to load the SEABEE barge and that the carrier exercised no control over the stevedore's performance. They also concur with the opinion of a marine surveyor who attributed cargo damage to "improper stowage and the absence of any blocking or bracing to secure the electrodes in place within the stow." Based on these agreed facts, and having determined that a carrier is not responsible for improper stowage undertaken by a shipper pursuant to a FIOS term in a bill of lading, the Court finds that the electrodes were damaged as a result of an "[a]ct or omission of the shipper or owner of the goods, his agent or representative" and holds that, under 46 U.S.C. Appx. § 1304(2)(i), neither the carrier nor the vessel are liable for the consignee's loss.

This result is consistent with simple justice and promotes the important maritime interests of practicality, efficiency, and certainty. It is just, for it places responsibility for proper stowage on the party agreeing to undertake it. It is practical and promotes efficiency in two ways. First, it enables a carrier to release SEABEE barges for inland loading by shippers without requiring it to dispatch or otherwise engage agents to oversee those activities at additional cost to shippers. And second, it promotes fast, inexpensive ocean transport by eliminating the time consuming and costly task of reopening barges for an inspection of the shippers' stowage. Finally, it promotes certainty by enabling parties to contractually allocate responsibilities for cargo handling and to insure themselves against the risks they assume thereby.

### D. Conclusion

For the reasons stated above, consignee Sigri Carbon Corporation's Motion for Summary Judgment is denied, carrier Lykes

Bros. Steamship Co.'s Motion for Summary Judgment is granted, and the action is dismissed. An appropriate Order will accompany this memorandum opinion.