**PT INDONESIA EPSON INDUSTRY, et al., Plaintiffs,**

v.

**ORIENT OVERSEAS CONTAINER LINE, INC., et al., Defendants.**

**Orient Overseas Container Line, Inc., et al., Third–Party Plaintiffs,**

v.

**American Southern Ins. Co., Third–Party Defendants.**

**No. 99–3373–CIV.**

United States District Court, S.D. Florida, Miami Division.

May 17, 2002.

---

Laurence F. Valle, Valle & Craig, Miami, FL, Arthur Roch, Miami, FL, for Plaintiffs.

Jeffrey Bradford Maltzman, Darren Wayne Friedman, Lawrence Eldridge Burkhalter, Jason Louis Weissman, Kaye, Rose & Maltzman, Miami, FL, for Orient Overseas Container Line, Inc.

Manuel Antonio Garcia–Linares, Richman, Greer, Weil, Brumbaugh, Mirabito & Christensen, Miami, FL, for Interstate Marine.

Richard B. Austin, Miami, FL, for Intrastate Maritime Transport, Inc.

Andrew Joseph Mirabito, Manuel Antonio Garcia–Linares, Richman, Greer, Weil, Brumbaugh, Mirabito & Christensen, Miami, FL, for American Southern Insurance Company.

### Amended Order Denying Plaintiffs' Motion for Summary Judgment Against Orient Overseas Container Line

JORDAN, District Judge.

For the reasons set forth below, the plaintiffs' motion for summary judgment

against Orient Overseas Container Line [D.E.30] is DENIED.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that might affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Hilburn v. Murata Electronics North Am., Inc., 181 F.3d 1220, 1225 (11th Cir.1999). Thus, the task is to determine whether, considering the evidence in the light most favorable to Orient Overseas, the non-moving party, there is evidence on which a jury could reasonably find a verdict in its favor. See Liberty Lobby, 477 U.S. at 251, 106 S.Ct. 2505; Hilburn, 181 F.3d at 1225; Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.1997).

## THE UNDISPUTED FACTS

The following material facts are undisputed and taken in the light most favorable to Orient Overseas. On or about June 28, 1998, PT Indonesia delivered containers of cargo to Orient Overseas for delivery to Epson America. See Plaintiffs' Statement of Undisputed Facts ¶ 2 [D.E. 30]. Orient Overseas issued a through bill of lading for six containers from Jakarta, Indonesia, to the consignee in Miami, Florida. See id. at ¶ 3. Upon arrival in the United States by ship from Singapore, one container containing 1248 computer printers was shipped overland from Long Beach, California, by rail to the Florida East Coast Railroad terminal in Miami, Florida. See id. at ¶ 5; Orient Overseas' Response to Plaintiffs' Motion for Summary Judgment at 2 [D.E. 31]. From there, the container was supposed to be delivered by Interstate Maritime Trucking by truck to Epson America at Miami International Forwarders.

The container arrived at the Florida East Coast Railroad terminal in Miami via railway on July 30, 1998. See Plaintiffs' Statement of Undisputed Facts at ¶ 6. After about three days of storage at the rail yard in Miami, IMT picked up the container for transport to Miami International Forwarders. See Orient Overseas' Response to Plaintiffs' Motion for Summary Judgment at 2. While en route, IMT's driver, Orestes Perez, stopped briefly at a cafeteria. See id.; Affidavit of Orestes Perez at ¶ 4 [D.E. 52] (October 7, 2000). Mr. Perez claims that upon returning to his truck and container, he was approached by two armed robbers who assaulted him at gunpoint, and hijacked the container and its cargo. See Perez Aff. at ¶ 6. The container of printers never arrived at Miami International Forwarders. See Affidavit of Mitchell Baxt at ¶ 5 [D.E. 29] (Aug. 7, 2000).

On October 28, 1999, the plaintiffs filed suit against Orient Overseas and IMT in the Circuit Court of the Eleventh Judicial Circuit. On November 17, 1999, PT Indonesia and Epson America filed an amended complaint against Orient Overseas and IMT seeking damages for the alleged loss of the container. Orient Overseas removed the action to federal court pursuant to 28 U.S.C. § 1441(b), and later filed a cross-claim against IMT and a third-party complaint against American Southern, as the insurer of IMT and Orient Overseas.

## The Application of COGSA

■ In their motion for summary judgment on the issue of liability,[1] the plaintiffs claim that the Carmack Amendment of the Interstate Commerce Act, 49 U.S.C. § 11707, and the Harter Act, 46 U.S.C. §§ 190, 1311, apply to the through bill of lading between the plaintiffs' and Orient Overseas. Orient Overseas contends that the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 et seq., governs this action, rather than the Carmack Amendment, 49 U.S.C. § 11706, the Harter Act, 46 U.S.C. §§ 190 et seq., or state common law. The through bill of lading specifies that COGSA applies to the entire transport, including the inland leg.[2]

■ In *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 701 (11th Cir.1986), the Eleventh Circuit held that the Carmack Amendment does not apply to the domestic shipment of foreign goods sent to the United States to an intended final destination beyond the port of discharge, unless the domestic leg is covered by a separate bill of lading or bills of lading. Unlike this case, *Swift* concerned the liability of the inland carriers; the liability of the ocean carrier was not at issue. And, the language in *Swift* does not indicate that the Eleventh Circuit intended to apply its rule to an ocean carrier such as Orient Overseas. Here there was a through bill of lading issued by Orient Overseas to the plaintiffs covering both the foreign and domestic legs of the transport of the carton of printers to Miami Interna-

tional Forwarders, and there was a second bill of lading issued by IMT to FEC to cover the inland transport of the goods by truck to Miami International Forwarders. I follow the Florida Supreme Court's analysis in *King Ocean Central America, S.A. v. Precision Cutting Svcs., Inc.*, 717 So.2d 507, 512 (Fla.1998), in holding that *Swift* does not support the conclusion that Orient Overseas—the ocean carrier—is covered by the Carmack Amendment simply because Orient Overseas issued a through bill of lading and IMT subsequently issued a separate bill of lading. Because the Eleventh Circuit's analysis in *Swift* does not apply to the issue of ocean carrier liability, the Carmack Amendment does not necessarily apply to the through bill of lading issued by Orient Overseas.

■ COGSA applies to any bill of lading for the carriage of goods by sea "to or from ports of the United States, in foreign trade." 46 U.S.C. § 1300 et seq. Parties may agree to apply COGSA to other periods of transit, as well, by so indicating in the bill of lading. *See Sail Am. Found. v. M/V T.S. Prosperity*, 778 F.Supp. 1282, 1286 (S.D.N.Y.1991) ("Where COGSA does not apply by operation of law, the parties to a bill of lading may incorporate the statute as a contractual term.") (citations omitted). *See also Fruit of the Loom v. Arawak Caribbean Line Ltd.*, 126 F.Supp.2d 1337, 1342 (S.D.Fla.1998). In this case, the language of clause 23 of the through bill of lading clearly indicates the parties' intent that COGSA govern the car-

---

**1.** At oral argument on October 10, 2001, counsel for PT Indonesia indicated that it was only seeking summary judgment as to liability for the loss of the containers.

**2.** Clause 23 of the through bill of lading states in pertinent part:

All carriage under this [b]ill of [l]ading to or from the United States of America shall have effect subject to the provisions of COGSA...Nothing contained herein, shall

be deemed a surrender by the [c]arrier of any of its rights or immunities or limitations or shall increase any of its responsibilities or liabilities under COGSA...Except as otherwise provided herein, COGSA...shall govern the [g]oods before loading on board and after discharge from the [v]essel and whilst subject to this [b]ill of [l]ading.

Bill of Lading, Clause 23 [D.E. 31, Exh. A] (Sept. 5, 2000).

riage of goods before loading, after discharge from the vessel, and while subject to the through bill of lading. Absent this clause, the bill of lading would be governed by the Harter Act, 46 U.S.C. §§ 190 et seq.

■ Under the Harter Act, a carrier transporting goods from or between United States ports and foreign ports cannot insert into a bill of lading any clause relieving it of liability for loss or damage arising from negligence, fault, · or failure. Although COGSA is not generally construed as superseding the Harter Act, or "any other law which would be applicable in the absence of [COGSA] insofar as they relate to the duties, responsibilities, and liabilities of the ship or carrier prior to the time when the goods are loaded on or after the time they are discharged from the ship," many courts have upheld contractual extensions of COGSA to periods ordinarily covered by the Harter Act, as long as COGSA does not conflict with the Harter Act. *See, e.g., Sabah Shipyard v. M/V Harbel Tapper,* 178 F.3d 400, 407 (5th Cir. 1999) (holding that the contractual incorporation of COGSA's $500–per–package–or–per–unit limit on liability was not inconsistent with the Harter Act, and therefore valid); *Uncle Ben's Int'l Div. of Uncle Ben's, Inc. v. Hapag–Lloyd Aktiengesellschaft,* 855 F.2d 215, 217 (5th Cir.1988) (holding that when parties extend COGSA to the pre-loading phase normally covered by the Harter Amendment, "any inconsistency with the Harter Act must yield to the Harter Act," and upholding COGSA's statute of limitations as consistent with the Harter Act); *Birdsall, Inc. v. Tramore Trading Co., Inc.,* 771 F.Supp. 1193, 1199 (S.D.Fla.1991) (holding that "[w]here the Harter Act would ordinarily apply to an event, it forbids and nullifies all contractual terms which broaden a carrier's immunities and defenses beyond those granted by the act itself," and by incorporating COGSA, a contract incorporates its "express deference to the Harter Act for these portions on the journey"); *United States v. Ultramar Shipping Co., Inc.,* 685 F.Supp. 887, 896 (S.D.N.Y.1988) (holding that COGSA did not apply where, though the bills of lading incorporated it, the Harter Act would ordinarily apply and COGSA would broaden a carrier's immunities and defenses). I see no inconsistency between COGSA's "q" clause, which limits liability for causes "arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier," 46 U.S.C. § 1304(2)(q), and the Harter Act, which prohibits clauses that would relieve the carrier of liability for loss or damage arising from the carrier's negligence, fault, or failure, *see* 46 U.S.C. §§ 190. COGSA, therefore, governs this action.[3]

### ESTABLISHING A PRIMA FACIE CASE UNDER COGSA

■ "To hold a carrier liable for missing or damaged goods under COGSA, a shipper must prove that the goods were damaged or lost while in the carrier's custody." *Plastique Tags, Inc. v. Asia Trans Line, Inc.,* 83 F.3d 1367, 1369 (11th Cir. 1996) (citing *Sony Magnetic Products, Inc. v. Merivienti O/Y,* 863 F.2d 1537, 1539 (11th Cir.1989)). "The shipper can meet this burden by showing: 1) full delivery of the goods in good condition to the carrier, and 2) outturn by the carrier of the cargo with damaged or missing goods." *Id.* The weight listed on a bill of lading establishes prima facie proof of receipt by the carrier

---

**3.** State law does not apply because "Congress has clearly preempted state law through COGSA in defining the relationship between ocean carriers and cargo interests." *GFT U.S.A. Corp. v. M/V Export Freedom,* No. 93 CIV. 4557 (RPP), 1995 WL 276193, * 11 (S.D.N.Y. May 11, 1995).

of that weight, and delivery in good condition, where the carrier lists the weight of the cargo upon receipt and the dispute is about a shortage of cargo on delivery. *See Daewoo Int'l Corp. v. Sea–Land Orient, Ltd.,* 32 F.Supp.2d 705, 708–710 (D.N.J. 1998).

■ Orient Overseas claims that the plaintiffs have not submitted sufficient evidence to establish a prima facie case under COGSA because the plaintiffs have not submitted any evidence of (1) what cargo was loaded on the container, (2) which party, if any, is the real party in interest under Federal Rule of Civil Procedure 17(a), and (3) the value of the cargo or the amount of damages.

The plaintiffs have met the burden of establishing a prima facie case under COGSA because (1) the through bill of lading listing the weight of the cargo demonstrates that the cargo was delivered to Orient Overseas in good condition, and (2) the parties do not dispute that the printers never arrived at Miami International Forwarders. The through bill of lading for the containers, which listed the weight of the container containing 1248 cartons of printers as 6864.00 kgs. and contained no limiting language, is sufficient to satisfy the first prong of a prima facie case—"that the cargo was in good condition, *i.e.,* not short, when it was delivered" to Orient Overseas. *Daewoo Int'l Corp.,* 32 F.Supp.2d at 710. *See also See Plastique Tags, Inc.,* 83 F.3d at 1369–70 ("In order for a bill of lading to constitute prima facie proof that the carrier received cargo consistent with the terms of the bill, it must either be without limiting language such as 'shipper's load and count' or it must contain terms that the carrier can verify."). This is particularly true given Orient Overseas' failure to produce any evidence to

controvert the plaintiffs' statement of facts on this issue. And, the second prong of the prima facie case—that the goods were discharged in damaged condition—is also satisfied.[4]

## ORIENT OVERSEAS' LIABILITY

■ "Once the shipper establishes a prima facie case, the burden of proof shifts to the carrier to prove either that it exercised due diligence to prevent the damage...or that the harm resulted from one of the excepted causes listed in 46 U.S.C.App. § 1304(2)." *Terman Foods, Inc. v. Omega Lines,* 707 F.2d 1225, 1227 (11th Cir.1983). One of the excepted causes under 46 U.S.C. § 1304(2) provides that a carrier is not responsible for loss or damage "arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier." 46 U.S.C. § 1304(2)(q). In asserting this exclusion, "the burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier contributed to the loss or damage." *Id. See Terman Foods, Inc.,* 707 F.2d at 1228.

■ Before analyzing the applicability of the "q" clause exception, I must first determine whether Orient Overseas can be held liable for the potential negligence of IMT under clause 4 of the bill of lading. It seems clear from the face of the bill of lading that Orient Overseas is an agent and trustee for IMT. *See* Bill of Lading, Clause 26 [D.E. 31, Exh. A] (Sept. 5, 2000) ("The [c]arrier shall be entitled to subcontract the whole or any part of the duties undertaken by the [c]arrier in this [b]ill of [l]ading in relation to the [g]oods...In entering into this contract the [c]arrier, to the extent of those provi-

4. Orient Overseas does not seem to dispute that the plaintiffs have satisfied this prong of the prima facie case.

sions, does so not only on its own behalf, but also as agent and trustee for such servants, agents and subcontractors."). Indeed, Orient Overseas does not dispute this fact. Instead, Orient Overseas claims that clause of 4 of the through bill of lading[5] relieves it from any liability as an agent or trustee of IMT, a participating carrier.

At oral argument on the summary judgment motions, the plaintiffs argued that the through bill of lading is ambiguous because clause 4 is inconsistent with the Himalaya clause.[6] The plaintiffs argue that the bill of lading should be construed against Orient Overseas as a result of this alleged ambiguity.

Clauses 4, 23, and 26 of the bill of lading,[7] when read together, allow Orient Overseas to subcontract all or part of its duties to a servant, agent, or subcontractor without increasing any of its responsibili-

ties or liabilities under COGSA. The Himalaya clause extends the benefits of the through bill of lading to Orient Overseas' servants, agents, and subcontractors.

The plaintiffs claim that the Himalaya clause also establishes Orient Overseas and IMT as each others' agents, which conflicts with the language of clause 4 relieving Orient Overseas of any liability for the negligence of IMT. I disagree with this contention. The through bill of lading is not inconsistent because the Himalaya clause merely indicates that IMT—the participating carrier—and Orient Overseas—the carrier—possess the same rights, and not that they are agents for each other. The language of the through bill of lading makes it clear that Orient Overseas is an agent or trustee for IMT, but with limited liability. I, therefore, decline to construe the bill of lading against Orient Overseas.

5. The relevant portion of clause 4 reads:

The care, custody and carriage of the [g]oods during any period in which a[p]articipating [c]arrier or its contractor or agent is in possession of the [g]oods shall be the sole responsibility of the [p]articipating [c]arrier and not the [c]arrier.

Bill of Lading, Clause 4 [D.E. 31, Exh. A] (Sept. 5, 2000).

6. "A 'Himalaya Clause' is an express provision in the through bill of lading that extends the COGSA defenses and protections to the carrier's agents and contractors." *Fireman's Fund Ins. Co. v. Tropical Shipping and Constr. Co., Ltd.,* 254 F.3d 987, 993, n. 1 (11th Cir. 2001). The Himalaya clause in clause 26 reads:

Every such servant, agent and sub-contractor of the [c]arrier...shall have the benefit of the [c]arrier as if such provisions were expressly for their benefit.

Bill of Lading, Clause 26 [D.E. 31, Exh. A].

7. The relevant portion of clause 4 of the through bill of lading reads:

The care, custody and carriage of the [g]oods during any period in which a[p]articipating [c]arrier or its contractor or

agent is in possession of the [g]oods shall be the sole responsibility of the [p]articipating [c]arrier and not the [c]arrier.

Bill of Lading, Clause 4 [D.E. 31, Exh. A].

The relevant portion of clause 23 of the through bill of lading reads:

Nothing contained herein, shall be deemed, a surrender by the [c]arrier of any of its rights or immunities or limitations or shall increase any of its responsibilities or liabilities under COGSA...

Bill of Lading, Clause 23 [D.E. 31, Exh. A].

The relevant portion of clause 26 reads:

The [c]arrier shall be entitled to sub-contract the whole or any part of the duties undertaken by the [c]arrier in this [b]ill of [l]ading in relation to the [g]oods...In entering into this contract the [c]arrier, to the extent of those provisions, does so not only on its own behalf, but also as agent and trustee for such servants, agents and subcontractors. The term "sub-contractor" as used in this clause shall include direct and indirect sub-contractors and their respective servants and agents and all such persons shall to this extent be or be deemed to be parties to the contract in or evidenced by this [b]ill of [l]ading.

Bill of Lading, Clause 26 [D.E. 31, Exh. A].

██ The more difficult question is whether clause 4 of the bill of lading is void under 46 U.S.C. § 1303(8) of COGSA, which provides as follows:

Any clause, covenant, or agreement in a contract of carriage relieving the carrier or ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect.

Courts have voided exculpatory clauses in a bill of lading contracted for by the parties that conflict with provisions in COGSA or with the purpose behind COGSA and its predecessor, the Harter Act. *See, e.g., Sun Oil Co. of Pennsylvania v. M/T Carisle,* 771 F.2d 805, 814 (3rd Cir.1985) (holding that a trade custom relieving carriers of responsibility for delivering 0.5 percent of crude oil was unenforceable because of COGSA's strong policy to preclude clauses lessening a carrier's liability); *Hanover Ins. Co. v. Shulman Transp. Enters., Inc.,* 581 F.2d 268, 273–274 (1st Cir.1978) (holding a clause limiting the carrier's liability to $50 per shipment invalid under 46 U.S.C. §§ 1303(8) and 1304(5)); *Caterpillar Overseas, S.A. v. S.S. Expeditor,* 318 F.2d 720, 722–724 (2nd Cir.1963) (holding that an exculpatory clause limiting the carrier's liability to discharge was void under the Harter Act's legislative purpose of eliminating the historically superior bargaining position of carriers via the insertion of exculpatory clauses); *Watermill Export, Inc. v. MV Ponce,* 506 F.Supp. 612, 615 (S.D.N.Y.1981) (holding that a clause with boilerplate language limiting the carrier's liability to $500 per trailer was unenforceable under 46 U.S.C. § 1303(8), which "makes void any provision in the bill of lading that attempts to limit defendants' potential liability beyond that permitted by statute"). *But see Fruit of the Loom,* 126 F.Supp.2d at 1341 (enforcing—without analyzing the potential conflict with COGSA—an exculpatory clause that relieved the carrier of liability for loss due to criminal acts where the shipper was a large, sophisticated entity that did not need protection from a contract of adhesion, had its attorneys review and negotiate carriers' bill of ladings, and had previously shipped with the carrier hundreds of times under the same terms and conditions); *Allseas Maritime S.A. v. M/V Mimosa,* 574 F.Supp. 844, 853 (S.D.Tex.1983) (enforcing a both-to-blame clause because "[n]either COGSA nor the public policy underlying it indicates that [b]oth-to-[b]lame clauses are disfavored"); *Norwich Pharmacal Co. v. S.S. Bayamon,* 474 F.Supp. 240, 241–242 (S.D.N.Y.1979) (enforcing a 50 cents per pound declared value where the clause was typed plainly on the face of the of the bill of lading and was an agreed valuation that was chosen by the shipper to obtain a lower freight rate, rather than by the carrier to limit its liability, because it did not represent the unequal bargaining that COGSA was designed to redress).

Given COGSA's strong policy against lessening a carrier's liability and toward off-setting the historically superior bargaining power of carriers, clause 4 of this bill of lading is null and void, and does not relieve Orient Overseas of liability for IMT's potential negligence. In order to avoid liability, Orient Overseas must show that the loss of the printers arose without its actual fault and privity and without the fault or neglect of IMT. *See* 46 U.S.C. § 1304(2)(q).

██ Having decided that Orient Overseas cannot shield itself from liability under clause 4, I turn to the question of whether the loss arose without the fault or neglect of IMT. Mr. Perez, the truck driver for IMT, testified at his deposition that

the keys to the truck, his wallet, and all of the contents of his wallet—including one hundred and fifty dollars—were still in the truck when it was found after the alleged hijacking; only his cell phone and the company radio were missing. *See* Deposition of Ortestes Perez at 64 [D.E. 74] (April 6, 2001). The police report from the incident states that the victim—Mr. Perez—recovered his own truck near his home and reported it to the police.[8] *See* Metro–Dade Police Department Offense–Incident Report at 5 [D.E. 31, Exh. C] (September 5, 2000). At his deposition, however, Mr. Perez denied finding the vehicle and instead testified that a dispatcher called him at home to tell him that his truck was seen, and that this prompted him to call the police. *See* Perez Depo. at 64. The police report also notes that the police suspected Mr. Perez of being involved in the theft. *See* Offense–Incident Report at 5.

Taking this evidence in the light most favorable to Orient Overseas, I find that there is a genuine issue of material fact as to whether Mr. Perez was involved in the alleged hijacking. *Cf. Fruit of the Loom,* 126 F.Supp.2d at 1345 (granting defendants' motions for summary judgment under an exculpatory clause that relieved the carrier of liability for loss due to criminal acts where both truck drivers and the owner of the trucking company were cleared of any involvement in the cargo hijackings, and the shipper's surveyor admitted that the inference of employee participation in the hijacking was purely circumstantial). This issue of material fact

precludes summary judgment on the applicability of the "q" clause exception. If Mr. Perez participated in the theft, Orient Overseas may not be able to shield itself from liability under the "q" clause because the loss would have been caused by the fault or neglect of Mr. Perez, a potential agent or servant of Orient Overseas as an employee of IMT. But if the fact-finder were to find that Mr. Perez was not involved in the loss of the cargo, the "q" clause would apply and shield Orient Overseas from liability.

Additionally, I am unable to determine, based on the limited evidence before me, whether Mr. Perez can be considered an agent or servant of IMT. In their supplemental memorandum in support of their motion for summary judgment, the plaintiffs, for the first time, cite to Mr. Perez' deposition to show that his stop was unscheduled, that IMT did not show any concern for the whereabouts of Mr. Perez despite his 3 hour and 40 minute delay, that IMT did not require Mr. Perez to carry a second set of keys with him when he operated a truck, and that IMT did not instruct Mr. Perez to lock the doors when leaving the truck running. *See* Supplemental Memorandum in Support of Plaintiff's Motion for Summary Judgment at 2–3 [D.E. 76] (citing to Perez Depo. at 48, 50, 54–56). The plaintiffs cite to no case law, however, to show whether this evidence is sufficient to prove IMT's liability as a matter of law. This minimal evidence is insufficient to show that the alleged hijacking was foreseeable and, more generally,

8. The plaintiffs argue that the police report and survey report should be stricken from the record, and not considered as evidence because the reports were neither authenticated nor verified. While only evidence that would be admissible at trial may be considered on summary judgment, it is possible that the police report and survey report would be admitted at trial either as business records un-

der Fed.R.Evid. 803(6) or public records under Fed.R.Evid. 803(8), if the person who wrote the reports testified as to their authenticity at trial. Moreover, the statements contained in the police reports attributable to Mr. Perez, an employee of IMT, would be admissible as admissions by a party-opponent under Fed.R.Evid. 801(d)(2).

whether it was in any way attributable to the negligence of IMT.

CONCLUSION

For the reasons set forth above, including the disputed issue of material fact as to Mr. Perez' participation in the alleged hijacking and the minimal evidence of IMT's responsibility for the potential acts of Mr. Perez, the plaintiffs' motion for summary judgment against Orient Overseas [D.E. 30] is DENIED.