United States Court of Appeals,

Eleventh Circuit.

No. 95-4556.

PLASTIQUE TAGS, INC., Plaintiff-Appellant,

v.

ASIA TRANS LINE, INC., Cho Yang Line and DSR Senator Lines, Defendants-Appellees.

May 28, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-2236-CIV-LCN), Lenore Carrero Nesbitt, Judge.

Before EDMONDSON, Circuit Judge, and FAY and GIBSON[*], Senior Circuit Judges.

FAY, Senior Circuit Judge:

This appeal arises from the District Court's order of summary judgment in favor of the defendants. The plaintiff, Plastique Tags, Inc., brought suit under the Carriage of Goods by Sea Act (COGSA), alleging that the defendant carriers were liable for the shortfall in a shipment of goods ordered by Plastique and transported by the defendants. Because Plastique's evidence is insufficient as a matter of law, we affirm.

## I. BACKGROUND

In October, 1992, Defendant Asia Trans Line, Inc. contracted to transport one sealed container from Inter-Korea Corporation in Korea to Plastique in New York. Inter-Korea represented that the container held 4,437,500 plastic bags. Asia Trans then issued a bill of lading for the cargo, which stated: " "SHIPPER'S LOAD &

[*]Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

COUNT' SAID TO CONTAIN:  5,600 boxes/4,437,500 ... plastic bags."

Asia then contracted with DSR Senator Lines to ship the container aboard the M/V Cho Yang World.  Inter-Korea delivered the sealed container directly to Senator.  Senator then issued another bill of lading, identical in all material terms to the Asia Trans bill of lading.

The M/V Cho Yang World delivered the container to New York, and Senator released the container with its seal intact to a trucking company.  The trucking company transported the container to Gift Box Corporation of America, Plastique's client.  Gift Box broke the seal, inventoried the container, and found 2,618,500 bags missing.  Gift Box refused to pay Plastique for the shipment. Approximately one year later, in October of 1993, Plastique sent notice of the missing bags to an agent of Cho Yang.

Plastique subsequently brought suit against the carriers (but not Inter-Korea, the shipper).  The District Court granted summary judgment for all the defendants, ruling as a matter of law that Plastique could not establish a claim under COGSA.

## II. STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  The evidence must be viewed in the light most favorable to the non-moving party.  *Augusta Iron and Steel Works, Inc. v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988).

III. ANALYSIS

To hold a carrier liable for missing or damaged goods under COGSA, a shipper must prove that the goods were damaged or lost while in the carrier's custody. *See Sony Magnetic Products Inc. v. Merivienti O/Y,* 863 F.2d 1537, 1539 (11th Cir.1989). The shipper can meet this burden by showing: 1) full delivery of the goods in good condition to the carrier, and 2) outturn by the carrier of the cargo with damaged or missing goods. *Id.*

Under COGSA, "a bill of lading shall be prima facie evidence of the receipt by the carrier of the goods as therein described ..." 46 U.S.C.App. § 1303(4) (1994). COGSA reflects the reality in international commerce that a buyer must often pay for goods sight unseen, relying only on the carrier's bill of lading. A clean bill of lading:

> is a fundamental and vital pillar of international trade and commerce, indispensable to the conduct and financing of business involving the sale and transportation of goods between parties located at a distance from one another. It constitutes an acknowledgment by a carrier that it has received the described goods for shipment.

*Berisford Metals Corp. v. S/S Salvador,* 779 F.2d 841, 845 (2d Cir.1985), *cert. denied,* 476 U.S. 1188, 106 S.Ct. 2928, 91 L.Ed.2d 556 (1986). As far back as 1895, the First Circuit recognized that the bill of lading had

> become so universal and necessary a factor in mercantile credits that the law should make good what the bill of lading thus holds out.

*Pollard v. Reardon,* 65 F. 848, 852 (1st Cir.1895).

Thus Plastique argues that the bills of lading issued in this case constitute prima facie proof that the defendants received full delivery of the goods, and that any other result would not only

violate COGSA but also threaten the stability of international commerce. However, we must conclude that under the facts of this case, the bills of lading at issue are not clean.[1] In order for a bill of lading to constitute prima facie proof that the carrier received cargo consistent with the terms of the bill, it must either be without limiting language such as "shipper's load and count" or it must contain terms that the carrier can verify.

If a bill of lading contains no limiting language such as "shipper's load and count" then the bill of lading constitutes prima facie proof for each term. *See Nitram, Inc. v. Cretan Life,* 599 F.2d 1359 (5th Cir.1979) (though it was not possible for the carrier to actually count the goods loaded because of the rapidity of the loading process, where the carrier issued a bill of lading with no limiting language, the carrier was liable for a shortfall).

If the bill of lading does contain limiting language, but the terms at issue in the bill of lading are verifiable by the carrier, then the bill of lading may constitute prima facie proof for those terms. *Westway Coffee Corp. v. M.V. Netuno,* 675 F.2d 30 (2d Cir.1982) (the weight of a sealed container is verifiable by a carrier and so the bill of lading constituted prima facie proof of the weight at delivery to the carrier, despite limiting language in the bill of lading).

---

[1]The growth in shipping through the use of sealed containers has highlighted the importance of clarifying the difference between a clean bill of lading and a conditional or restricted bill of lading. When sealed containers are used it is normally impossible for the carrier to verify the stated contents. In this case, the parties have stipulated that the container was sealed when delivered to the carrier, and that the seal was intact when the container was delivered to Gift Box.

However, we agree with the conclusion of the Third Circuit that if the bill of lading contains limiting language, it does not constitute prima facie proof of terms not verifiable by the carrier. *See Bally, Inc. v. M.V. Zim America,* 22 F.3d 65 (2d Cir.1994) (while a bill of lading with limiting language constituted prima facie proof of the weight of a sealed container, it did not constitute prima facie proof of the number of items inside the sealed container).

These distinctions are based on COGSA. COGSA expressly states that a carrier shall not be bound to include in the bill of lading a term which he has no reasonable means of checking. 46 U.S.C.App. § 1303(3)(c) (1994). If the carrier includes such a term without limiting language, he is bound by the bill of lading whether or not he can verify the term. *See Nitram,* 599 F.2d at 1369-71 & n. 27. However, if the bill of lading does contain limiting language stating that a term was supplied by the shipper and not checked by the carrier, then the carrier is generally not bound. *See Bally,* 22 F.3d at 69. The only exception to this second rule is when the term is easily verifiable by the carrier; in that case he cannot avoid liability by simply including limiting language. *See Westway,* 675 F.2d at 32. This exception is necessary to prevent carriers from loading obviously empty containers or obviously inferior goods and avoiding liability by merely including limiting language.

In the instant case, 1) the bills of lading contained limiting language and 2) the amount of goods in the sealed container was not verifiable by the carrier. Thus the bills of

lading do not constitute prima facie proof of delivery to the carrier of the full amount. Because Plastique presents no other proof of good delivery, it cannot show that the loss occurred while the cargo was in the carrier's custody, and its claim must fail.

## IV. CONCLUSION

Because Plastique's proof is insufficient as a matter of law, the judgment of the District Court is hereby AFFIRMED.