DAEWOO INTERNATIONAL
(AMERICA) CORP.,
Plaintiff,

v.

SEA–LAND ORIENT LTD., Sea–Land
Inc., and Wice Marine Services,
Ltd, Defendants,

Daewoo International (America)
Corp., Plaintiff,

v.

Round–The–World (U.S.A.) Corp., Ever-
green Lines Inc. and Evergreen
Marine Corp., Defendants,

and.

Evergreen Marine Corp. (Taiwan) Ltd.,
Defendant/Third–Party Plaintiff,

v.

Union Pacific Railroad, Southern Pacific
Railroad and CSX Railroad, Third–
Party Defendants.

Civil Action Nos. 97–608, 97–624.

United States District Court,
D. New Jersey.

May 28, 1998.

Hill Rivkins & Hayden by Claudia Botero Gotz, Jersey City, NJ, for Daewoo International (America) Corp.

DeOrchis Walker & Corsa by Marc Kunkin, Union, NJ, for Sea–Land Orient Ltd. and Sea–Land Services Inc.

Badiak, Will & Maloof by Deborah Reid, New York City, Kraemer, Burns, Mytelka & Lovell by Wayne Greenfeder, Springfield, NJ, for Wice Marine Services Ltd.

Clark, Atcheson & Reisert by Peter D. Clark, Red Bank, NJ, for Round–The–World (U.S.A.) Corp.

Chichanowicz, Callan & Keane by Paul M. Keane, New Providence, NJ, for Evergreen Lines, Inc. and Evergreen Marine Corp.

Law Offices of George W. Wright by Karen A. Halligan, Hackensack, NJ, for Union Pacific Railroad and Southern Pacific Railroad.

Kroll & Tracts by Hyman Hillebrand, Miami, FL, for CSX Railroad.

## OPINION

BISSELL, District Judge.

This matter comes before the Court on plaintiff Daewoo International (America) Corp.'s ("Daewoo's") motion for summary judgment against defendants Wice Marine Services, Ltd. ("Wice") and Round–the–World (U.S.A.) Corp. ("RTW") and on those defendants' cross-motions for summary judgment against plaintiff. On February 6, 1997, plaintiff Daewoo filed two admiralty actions, one against defendants Sea–Land Orient, Ltd., Sea–Land Service, Inc. and Wice, and the other against defendants RTW, Evergreen Lines, Inc. and Evergreen Marine

Corp. These actions were consolidated by an Order entered June 27, 1997. The Complaints asserted that defendants breached their duties and obligations to plaintiff as common carriers.

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333.

## FACTS

This action concerns the shipment of 14 ocean containers from Hong Kong to the United States, which plaintiff expected would house its order for 1,240,800 plastic videocassette casings and which, instead, were discovered at their destinations to contain only cement bricks. Plaintiff Daewoo, the consignee, is a New York corporation with its principal place of business in New Jersey. (Plaintiff's 56.1 Statement of Facts, ¶ 1). Defendants Wice and RTW are non-vessel owning common carriers ("NVOCC's").[1] (RTW's 56.1 Statement of Facts ¶ 2; Wice's [56.1] Statement of Facts, ¶ 7).

Plaintiff claims that it entered into a contract for the videocassette casings with Hang Fung Technology Manufacturing Co. ("Hang Fung"), the shipper, on approximately January 12, 1996. (Plaintiff's 56.1 Statement of Facts, ¶ 2). The goods were to be shipped from Hong Kong to New Jersey and Indiana, (see id., ¶ 3; Wice's [56.1] Statement of Facts ¶ 3), and were to be paid for via irrevocable letters of credit to be issued by the Korea Exchange Bank of New York in favor of the shipper, (see Plaintiff's 56.1 Statement of Facts, ¶ 4; Wice's [56.1] Statement of Facts, ¶ 4; RTW's 56.1 Statement of Facts, ¶ 7). (See also Botero Gotz Aff., Exh. D.; Choi Aff., ¶¶ 4–5, Exh. 1). Daewoo's representative, B.Y. Choi, states in an affidavit: "Letters of credit are frequently used in foreign trade and these letters are drawn by sellers and honored by the banks only if presented with clean bills of lading and other docu-

---

1. Defendant Wice explains:
   An NVOCC is a common carrier that does not operate the vessel by which the ocean transportation is provided.... The vessel is operated by a shipping company or ocean common carrier. Vessel space is either "sold" or leased to an intermediary who acts as a contractual common carrier.

(Wice Br. at 9 n. 2 (citing 46 U.S.C. § 1702(17)); All Pacific Trading, Inc. v. Vessel M/V Hanjin Yosu, 7 F.3d 1427 (9th Cir.1993), cert. denied, 510 U.S. 1194, 114 S.Ct. 1301, 127 L.Ed.2d 653 (1994)).

ments such as invoices and packing lists of the shipment." (*Id.*, ¶ 6).

Wice and RTW issued bills of lading for the shipments. (Botero Gotz Aff.; Exhs. A, B, C). Mr. Choi states that the bills of lading "were negotiated to Daewoo, as *bona fide* purchaser." (Botero Gotz Aff., Exh. D., Choi Aff., ¶ 7). Mr. Choi further asserts: "Daewoo relied upon the representations on the faces of the bills of lading issued by WICE and RTW when Daewoo purchased the bills of lading for value." (*Id.*, ¶ 8).[2] Mr. Choi states: "The shipper presented the bills of lading with the invoices and packing lists and was paid by the bank." (*Id.*, ¶ 9).

RTW arranged for the transportation of four containers which were shipped from Hong Kong on or about January 26, 1996 and arrived in Indiana on or about February 21, 1996. (Sanislow Aff., Exh. 6; Robinson Aff., ¶ 4). Wice arranged for the transportation of 10 containers from Hong Kong to New Jersey at approximately the same time. (Chau Decl., ¶¶ 4–24). All of the containers were loaded and sealed by the shipper, Hang Fung. (*Id.*, ¶ 11; Sanislow Aff ., Exh. 6; Robinson Aff., ¶ 6). All arrived at their final destinations with their seals intact, containing cement blocks or bricks rather than videocassette casings. (Plaintiff's 56.1 Statement of Facts, ¶¶ 18–19; Wice's [56.1] Statement of Facts, ¶¶ 18–19; RTW's 56.1 Statement of Facts, ¶ 8). When RTW learned of the discrepancy in the contents of the containers, it attempted to contact the shipper directly, only to learn that Hang Fung's office was vacant and it had moved or closed its business. (Sanislow Aff., Exh. 6; Robinson Aff., ¶ 8). Its subsequent efforts to contact Hang Fung have been unsuccessful, and Hang Fung's whereabouts are unknown. (*Id.*, ¶ 9).

RTW's and Wice's bills of lading specified that each sealed container weighed 17,500 kilograms. (Botero Gotz Aff., Exhs. A, B, C). They also contained the notations: "Shipper's Load and Count" and "S.T.C.," which stands for "said to contain." (*Id.*) Wice and RTW admit that they did not

weigh the containers at the point of shipment. (Botero Gotz Aff., ¶¶ 25–26, Exhs. H, I). When plaintiff had the containers weighed at their destinations, they weighed between 9,548.22 and 6,672.41 kilograms each, (Botero Gotz Aff., Exh. J), substantially less than was indicated on the bills of lading. Mr. Choi states "We believe that Wice and RTW should be liable for the losses sustained by DAEWOO for the misrepresentations on the bills of lading since DAEWOO expected to receive the quantity of cargo represented on the bills of lading." (Botero Gotz Aff., Exh. D.; Choi Aff., ¶ 10).

## ANALYSIS

### I. Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.) (*en banc*), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). In deciding a motion for summary judgment, a court must view the facts in the light most favorable to the nonmoving party and must resolve any reasonable doubt as to the existence of a genuine issue of fact against the moving party. *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). The moving party has the burden of establishing that there exists no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Supreme Court has stated that, in applying the criteria for granting summary judgment to a defendant:

> The judge must ask ... not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere ex-

---

**2.** Defendants dispute these characterizations. (RTW's 56.1 Statement of Facts, ¶ 7; Wice's [56.1] Statement of Facts, ¶¶ 15–17, 24).

istence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict .... *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. (*See id.*)

In order to survive a motion for summary judgment, a plaintiff must present "more than a mere scintilla of evidence" in his favor. *Anderson v. Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. 2505; *see also Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67, 72 (3d Cir.1990). He "cannot simply reallege factually unsupported allegations contained in [his] pleadings." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir.1989). Only evidence that would be admissible at trial may be used to test a summary judgment motion; evidence with a deficient foundation must be excluded from consideration. (*Id.* at 465 n. 12; *see also Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890–92 (3d Cir.1992)).

## II. Application

In their motion and cross-motions, plaintiff and defendants seek summary judgment as to defendants' liability under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. § 1300 *et seq.* COGSA requires that carriers of cargo between the United States and foreign ports, 46 U.S.C.App. § 1300, "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." 46 U.S.C.App. § 1313(2).

■ "In order to enforce [their] rights under COGSA, 'litigants must engage in the ping-pong game of burden shifting mandated by sections 1303 and 1304 of the Act.'" *R.B.K. Argentina S.A. v. M/V DR. JUAN B. ALBERDI*, 935 F.Supp. 358, 368 (S.D.N.Y.

1996) (quoting *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir.1995)). The United States Court of Appeals for the Second Circuit explained:

A plaintiff-consignee establishes a prima facie case for recovery under COGSA by demonstrating that the goods were damaged [or lost] while in the defendant-carrier's custody.... It is well settled that this burden can be met by proving "(1) delivery of the goods to the carrier in good condition and (2) outturn by the carrier in damaged [or short] condition." ... "When the consignee proves its prima facie case, the burden shifts to the carrier to show that the loss or damage falls within one of the COGSA exceptions set forth in [46 U.S.C.App. § 1304(2) ]."

*Bally, Inc. v. M.V. ZIM AMERICA*, 22 F.3d 65, 68–69 (2d Cir.1994) (quoting *Westway Coffee Corp. v. M.V. NETUNO*, 675 F.2d 30, 32 (2d Cir.1982) (other citations omitted)); *see also Plastique Tags, Inc. v. Asia Trans Line, Inc.*, 83 F.3d 1367, 1369 (11th Cir.1996); *Associated Metals & Minerals Corp. v. M/V LOTILA*, 845 F.Supp. 257, 260 (E.D.Pa. 1993); *AIG Europe, S.A. v. M/V MSC LAUREN*, 940 F.Supp. 925, 929 (E.D.Va.1996), *aff'd*, 134 F.3d 362 (4th Cir.1998). "To establish a prima facie case [the plaintiff] must adduce evidence that, standing alone, establishes both prongs of the claim." *R.B.K. Argentina*, 935 F.Supp. at 368.

■ The Court concludes that plaintiff cannot prove the first prong of its prima facie case: "delivery of the goods to the carrier in good condition." *Bally*, 22 F.3d at 69. Because plaintiff cannot establish its prima facie case, the Court will grant summary judgment to defendants.

■ Plaintiff's sole evidence that the goods were delivered to defendants in good condition is the bills of lading from RTW and Wice, specifying that each container received weighed 17,500 kilograms. Under COGSA, "a bill of lading shall be prima facie evidence of receipt by the carrier of the goods as therein described." 46 U.S.C.App. § 1303(4). However, a bill of lading is not prima facie evidence of the contents of a sealed container because that aspect of the cargo is not ascer-

tainable from an external examination. *See Bally*, 22 F.3d at 69 (bill of lading not prima facie evidence of the number of cartons .within sealed contains where cartons found to be missing at outturn); *accord Plastique*, 83 F.3d at 1370; *R.B.K. Argentina*, 935 F.Supp. at 368–69; *see also Caemint Food, Inc. v. Brasileiro*, 647 F.2d 347, 352 (2d Cir.1981) (bill of lading not. prima facie evidence . of condition of goods shipped in sealed packages where goods found to be damaged at outturn); *Westway*, 675 F.2d at 32–33 ("a clean bill of lading attesting to the 'apparent order and condition of the goods' will not constitute a prima facie showing of the absence of concealed, internal conditions that were not 'apparent' to the external observer.")[3]

■ As plaintiff notes, manifestations on a bill of lading as to the weight of the cargo are treated differently. " '[T]he weight listed on a bill of lading is prima facie proof of receipt by the carrier of that weight regardless of attempted reservations like "said to weigh," "shipper's load and count," and "contents of package are shipper's declaration." ' " *Bally*, 22 F.3d at 69 (citing *Westway*, 675 F.2d at 32). This is because under COGSA's statutory scheme, "[o]nce the carrier lists the weight of the goods (which normally will be readily verifiable by the carrier), he represents that he has no reasonable ground for suspecting that the weight of the goods actually received varies from the listed weight and that he has reasonable means .of checking the weight." *Westway*, 675 F.2d at 32 (citing 46 U.S.C.App. § 1303(c)).[4]

Accordingly, in cases where carriers have delivered cargo discovered to contain less of its contents than expected, courts have routinely held carriers liable (and determined, in doing so, that plaintiffs demonstrated delivery of the goods to the carrier in good condition) on the basis of carriers' specifications of a weight on the bill of lading that was greater than the cargo's weight on arrival. For example in *Westway*, the consignee ordered 1,710 cartons of coffee from Sao Paolo, Brazil. The carrier issued a bill of lading, marked "Said to Contain (STC)," "Shipper's Load and Count," and "Contents of Packages Are Shipper's Declaration." It listed the gross weight of the containers filled with coffee as 76,608 kilos. Upon arrival at its destination in padlocked and sealed containers, there was a shortage of 419 cartons or approximately 20 tons of coffee. The carrier was held liable. 675 F.2d at 31–32, 34; *see also e.g., AIG Europe v. M/V MSC LAUREN*, 940 F.Supp. 925, 930–32 (E.D.Va.1996); *Hartford Fire Ins. Co. v.. M/V SAVANNAH*, 756 F.Supp. 825, 828–29 (S.D.N.Y.1991); *Leather's Best International, Inc. v. MV "LLOYD SERGIPE"*, 760 F.Supp. 301, 309 (S.D.N.Y.1991); *Spanish–American Skin Co. v. M S FERNGULF*, 143 F.Supp. 345, 350–51 (S.D.N.Y.1956), *aff'd*, 242 F.2d 551 (2d Cir.1957).[5]

The connection that plaintiff would draw between those cases and this one is tenuous, however. Where a case is about a shortage of cargo on delivery, it stands to reason that a carrier's bill of lading specifying a higher weight at the time the cargo was received by the carrier than the weight of the cargo on delivery would constitute sufficient evidence to establish that the goods were delivered to the carrier in "good condition." The bill of

---

**3.** "The unfortunate reappearance of the 'prima facie' terminology referring to the first of two components of plaintiff's claim (delivery of the goods to the carrier in good condition) should not be confused with the overall 'prima facie' case for recovery that plaintiff is seeking to establish by proof of both components." *Westway*, 675 F.2d at 33 n. 2.

**4.** COGSA provides that a bill of lading should state the apparent order and condition of the goods, but also specifies that "no carrier ... shall be bound to state or show in the bill of lading any marks, number, quantity or weight which he has reasonable ground for suspecting not accurately to represent the goods actually received, or which he has no reasonable means of checking." 46 U.S.C.App. § 1303(3)(c).

**5.** It should be noted that COGSA provides:

The shipper shall be deemed to have guaranteed to the carrier the accuracy at the time of shipment of the marks, number, quantity, and weight, as furnished by him; and *the shipper shall indemnify the carrier against all loss, damages, and expenses arising or resulting from inaccuracies in such particulars.* The right of the carrier to such indemnity shall in no way limit his responsibility and liability under the contract of carriage to any person other than the shipper.

46 U.S.C.App. § 1303(5) (emphasis added).

lading is evidence that the goods weighed more when they were received by the carrier than when they were delivered, and the issue is when missing goods disappeared. The bill of lading demonstrates that the cargo was in good condition, *i.e.*, not short, when it was delivered.

However, this case involves a substitution of cargo, cement bricks for videocassette casings, not a shortage of cargo on delivery, so "good condition" is not fundamentally a matter of weight. For the cargo here to have been in "good condition" when it was received by defendants, it would have had to constitute videocassette casings, not cement bricks. This cannot be proven by the mere presentation of bills of lading specifying a weight at receipt greater than the weight at delivery. Plaintiff has not even submitted evidence that the weight specified on the bills of lading would. have been the weight of the videocassette casings that it expected to find in the containers.[6] Nor has plaintiff submitted any other evidence as to the internal conditions of the sealed containers; because such conditions are not apparent from an external examination, they cannot be proven by bills of lading alone. *Bally*, 22 F.3d at 69; *Caemint*, 647 F.2d at 352; *Westway*, 675 F.2d at 32–33.[7]

In addition, other evidence suggests that the cargo was not in good condition, *i.e.*, videocassette casings rather than cement bricks, at the time it was delivered to the defendants. The containers at issue were loaded and sealed by Hang Fung before being delivered to the defendants, and the seals were intact when the containers were delivered to plaintiff. *See Bally*, 22 F.3d at 70

(stating "[d]elivery by a carrier of a container with an intact seal does not conclusively prove that loss did not occur while the container was in the carrier's possession," but determining that shortage in cargo could not be attributed to a carrier where containers were sealed on delivery and there was no evidence that containers had been tampered with or seals had been breached). In addition, by the time the substitution of cargo was discovered, Hang Fung, the shipper, had disappeared.

The evidence, viewed as a whole, suggests that the cargo that was delivered to the defendants contained cement bricks not videocassette casings. Notwithstanding the discrepancy between the weights specified on the bills of lading and the weight of the cargo delivered, plaintiff cannot meet its burden of proving that the cargo was delivered to defendants in good condition. Because plaintiff cannot prove its prima facie case, the Court will grant summary judgment to defendants.

Finally, even if plaintiff could prove its prima facie case and the burden shifted to defendants under COGSA, the Court concludes that defendants would avoid liability. The same evidence discussed above demonstrates that the loss or damage was caused "without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier," as contemplated by 46 U.S.C.App. § 1304(2)(q). *See Roco Carriers, Ltd. v. M/V Nurnberg Express*, 1989 A.M.C. 2527, 1989 WL 66675, *3 (June 15, 1989 S.D.N.Y..), *aff'd*, 899 F.2d 1292 (2d Cir.1990) ("The fact that all seals remained intact throughout the time when the container was in [the defendant's] custo-

---

6. Indeed, it is counterintuitive that the videocassette casings would have weighed the amount specified on the bills of lading, an amount greater than the weight of the bricks that were actually delivered.

7. Because defendants' specifications of the weights on the bills of lading alone do not demonstrate that the cargo was in good condition when received, the Court need not consider plaintiff's argument that defendants are estopped from denying the accuracy of the weights they specified. (*See* Plaintiff's Reply Br. at 10–11 (citing *Westway Coffee Corp. v. M.V. Netuno*, 528 F.Supp. 113, 117 (S.D.N.Y.1981); *Freedman v. the Concordia Star*, 250 F.2d 867, 869 (2d Cir.

1958))). Were the Court to address that argument, however, it would find that there is no evidence plaintiff relied to its detriment on the representations in the bills of lading, notwithstanding plaintiff's representatives' conclusory assertion to that effect. (*See* Botero Gotz Aff., Exh. D; Choi Aff., ¶ 8). Plaintiff entered into the contract with Hang Fung directly before the bills of lading were even issued. The irrevocable letter of credit required the presentation of shipper's documentation evidencing the contents of the containers in addition to three original bills of lading; it allowed for partial shipments; and it did not require any verification or information regarding weight. (*Id.*, Exh. 2).

dy indicates no fault on the part of [the defendant] in accordance with 46 U.S.C.App. § 1304(2)(q), and rebuts the prima facie showing made by the issuance of a clean bill of lading.")

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied, and the cross-motions of defendants Wice and RTW for summary judgment are granted.

## ORDER

For the reasons set forth in the Court's Opinion filed herewith,

It is on this 27th day of May, 1998,

**ORDERED** that plaintiff's motion for summary judgment against defendants Wice Marine Services, Ltd. and Round–the–World (U.S.A.) Corp. be and it hereby is denied; and it is further

**ORDERED** that the cross-motions of defendants Wice Marine Services, Ltd. and Round–the–World (U.S.A.) Corp. be and they hereby are granted, and plaintiff's complaint is hereby dismissed in its entirety as to those two defendants.