

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-19-1999

# Daewoo Intl Corp v Sea Land Orient Ltd

Precedential or Non-Precedential:

Docket 98-6171

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Daewoo Intl Corp v Sea Land Orient Ltd" (1999). *1999 Decisions.* Paper 306.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/306

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 19, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-6171

DAEWOO INTERNATIONAL (AMERICA) CORP.

v.

*SEA-LAND ORIENT LTD.; *SEA-LAND SERVICES, INC.;
WICE MARINE SERVICES, LTD.

       (D.C. Civil No. 97-608)

DAEWOO INTERNATIONAL (AMERICA) CORP.

v.

ROUND-THE-WORD (U.S.A.) CORP.;
*EVERGREEN LINES, INC.; *EVERGREEN MARINE CORP.

*EVERGREEN MARINE CORP.,

       Defendant/Third-Party Plaintiff

v.

*UNION PACIFIC RAILROAD COMPANY;
*SOUTHERN PACIFIC RAILROAD;
*CSX RAILROAD,

       Third-Party Defendants

       (D.C. Civil No. 97-624)

       Daewoo International (America) Corp.,

       Appellant

       *Sea-Land Orient, Ltd., Sea-Land Services, Inc.,
       Evergreen Lines, Inc., Evergreen Marine Corp.,
       Union Pacific Railroad, Southern Pacific
       Railroad, and CSX Railroad dismissed pursuant
       to Court's order dated February 22, 1999

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action Nos. 97-cv-00608/624)
District Judge: Honorable John W. Bissell (97-608)
District Judge: Honorable Alfred J. Lechner, Jr. (97-624)

Argued April 27, 1999

Before: SCIRICA, ROTH and MCKAY,1  Circuit Judges

(Opinion filed November 19, 1999)

        Martin B. Mulroy, Esquire (Argued)
        478 State Route 28, Suite 444
        Bridgewater, NJ 08807

         Attorney for Appellant

        Wayne D. Greenfeder, Esquire
        Kraemer, Burns, Mytelka, Lovell
         & Kulka
        675 Morris Avenue, 3rd Floor
        Springfield, NJ 07081

        Nicholas Kalfa, Esquire (Argued)
        Deborah R. Reid, Esquire
        James J. Ruddy, Esquire
        Badiak, Will & Maloof, LLP
        120 Broadway, Suite 1040
        New York, NY 10271

         Attorneys for Appellee
         Wice Marine Services, Ltd.
_____

1. Honorable Monroe G. McKay, Circuit Judge, United States Court of
Appeals for the Tenth Circuit, sitting by designation.

        Peter D. Clark, Esquire
        James R. Sanislow, Esquire
        Gregory G. Barnett, Esquire (Argued)
        Clark, Atcheson & Reisert
        535 Fifth Avenue
        New York, NY 10017

         Attorneys for Appellee
         Round-The-World (U.S.A.) Corp.

OPINION OF THE COURT

ROTH, Circuit Judge.

Daewoo International (America) Corporation purchased over one million plastic videocassette tape holders from Hang Fung Technology Manufacturing Company of Hong Kong. When Daewoo received the shipment in the United States and opened the containers, it found nothing but cement blocks. The common carriers, Round-The-World (USA) Corporation ("RTW") and Wice Marine Services Limited, when they issued the bills of lading, had received no notice of any problems. This case presents the question whether, under the Carriage of Goods by Sea Act (COGSA), 46 App.U.S.C.A. S 1300 et seq., a common carrier, with no notice that anything is awry, is obligated to inspect a sealed shipment before issuing a bill of lading. We hold that no such duty exists.

I. FACTS

Daewoo purchased the tape holders from Hang Fung in Hong Kong. Hang Fung agreed to ship them to Daewoo in the U.S. In return, Daewoo arranged for Korea Exchange Bank to issue letters of credit in favor of Hang Fung. The letters of credit described the tape holders, listed quantity and price, and indicated that the shipment was to be "FOB: Hong Kong." The letters of credit were irrevocable and did not require confirmation from Daewoo for the bank to pay Hang Fung. Moreover, under the terms of the deal, Hang Fung could receive payment from the bank as soon as it

3

presented the shipping documents, without waiting for the shipment to reach Daewoo.

For the shipment, Hang Fung loaded and sealed fourteen ocean containers. It then delivered the containers to the appellees, RTW and Wice, which are non-vessel owning common carriers. In return, RTW and Wice issued bills of lading, which were provided to Hang Fung (the shipper) and Daewoo (the consignee and cargo owner). The bills of lading listed the weights and contents of the containers as declared by Hang Fung. Hang Fung represented that each container held pallets of "V/O Housing" and weighed 17,500 kilograms. The container references on the bills of lading were qualified with the terms, "Shipper's Load and Count" and "S.T.C.," which means "said to contain." The carriers did not weigh the containers or break the seals to inspect the contents.

The ocean voyage was uneventful, and the containers were delivered safely to Daewoo with seals intact. When the containers were opened, it was discovered that they contained cement blocks instead of tape holders and that the weights listed on the bills of lading were incorrect.[2] In the meantime, Hang Fung had received payment from the bank and disappeared.

Daewoo sued RTW and Wice to recover its payment for the goods, plus shipping expenses.[3] After discovery, Daewoo moved, and RTW and Wice cross-moved, for summary judgment under COGSA and principles of estoppel.

The District Court denied Daewoo's motion, granted RTW's and Wice's cross-motions, and dismissed the complaint. It determined that Daewoo had failed to establish a prima facie case under COGSA because it did

_____

2. Daewoo's agents did not immediately break the seals and inspect every container upon delivery. Although most or all of the containers were delivered in February 1996, some were not opened and inspected until March 22, 1996.

3. Daewoo also sued in a separate action ocean carriers Sea-Land Orient Limited, Sea-Land Services Incorporated, Evergreen Lines Incorporated, and Evergreen Marine Corporation. Although the two suits were consolidated, this appeal concerns only defendants RTW and Wice.

not prove that the goods were delivered to the carriers in good condition. Daewoo's only evidence was the bills of lading. In the court's opinion, this did not prove the contents of the sealed containers, which were not ascertainable from the outside.

The court acknowledged that Daewoo was correct in arguing that the weight notations on the bills of lading were prima facie proof of receipt of that weight, despite such qualifiers as "Shipper's Load and Count." However, the court distinguished this case from those cited by Daewoo in which carriers were held liable based on weight listings that were higher than actual weight. Those cases dealt with shortages of cargo, which in the court's opinion was different than a situation involving a substitution of cargo. There is no indication that the substitution could have been ascertained from the listed weights. Moreover, the fact that the seals from Hang Fung had remained intact and that Hang Fung had disappeared further indicated to the court that the carriers were not at fault and that, even if the burden of proof were to shift to the carriers, the carriers would not have been found liable.

Daewoo appealed. The District Court had jurisdiction under 28 U.S.C. S 1333. We have jurisdiction pursuant to 28 U.S.C. S 1291.5 Our standard of review is plenary. See Sun Oil Company of Pennsylvania v. M/T Carisle, 771 F.2d 805, 812 (3d Cir. 1985). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. See FED. R. C IV. P. 56(c).

II. DISCUSSION

COGSA regulates the carriage of goods by sea between U.S. and foreign ports. See 46 App.U.S.C.A.SS 1300, 1312. A carrier of goods has the duty to "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." Id. S 1303(2). A carrier has the further duty of issuing a bill of lading which contains a description of the goods. Id. S 1303(3).4  That bill of lading serves as prima

_____

4. The statute provides in pertinent part:

    After receiving the goods into his charge the carrier . . . shall, on

5

facie evidence that the carrier received the goods as described. Id. S 1303(4). When the carrier delivers the goods, the bill of lading constitutes prima facie evidence of the goods' delivery, unless the receiver gives notice at that time, or within three days if the loss or damage is not apparent. Id. S 1303(6).5

Under SS 1303 and 1304, a cargo owner has to establish a prima facie case when it has demonstrated that the cargo was delivered to the carrier in good condition but was delivered by the carrier to the cargo owner in a short or damaged condition. See Sun Oil Company of Pennsylvania, 771 F.2d at 810. Once the cargo owner has established a prima facie case, the burden shifts to the carrier. Id. One way for the carrier to meet its burden is to show that the loss or damage falls within one of the exceptions to liability in S 1304(2)(a)-(p). Id.

To establish that the cargo here was delivered to the carrier in good condition, Daewoo points to the bills of

_____

demand of the shipper, issue to the shipper a bill of lading showing
among other things . . .

(b) Either the number of packages or pieces, or the quantity or weight, as the case may be, as furnished in writing by the shipper.
(c) The apparent order and condition of the goods: Provided, That no
carrier . . . shall be bound to state or show in the bill of lading any
marks, number, quantity, or weight which he has reasonable ground for suspecting not accurately to represent the goods actually
received, or which he has had no reasonable means of checking.

46 App.U.S.C.A. S 1303(3).

5. The statute provides in pertinent part:

Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the carrier . . . at the port of discharge . . . at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the contract
of carriage, such removal shall be prima facie evidence of the delivery by the carrier of the goods as described in the bill of lading.
If the loss or damage is not apparent, the notice must be given within three days of the delivery.

46 App.U.S.C. S 1303(6).

lading. It contends that the carriers should have inspected the cargo to verify that the information provided by Hang Fung was correct before they listed that information on their bills of lading. Daewoo argues that once the carriers listed the information on the bills of lading, they were responsible for any inaccuracies.

Although a bill of lading, attesting to the apparent good order and condition of the goods, normally constitutes prima facie evidence of the goods as described, see S 1303(4)(c), a bill of lading is not prima facie evidence of the contents of a sealed container because the contents are not discoverable from an external examination. Bally, Inc. v. M.V. Zim America, 22 F.3d 65, 69 (2d Cir. 1994); Westway Coffee Corp. v. M.V. Netuno, 675 F.2d 30, 32–33 (2d Cir. 1982); Caemint Food, Inc. v. Brasileiro, 647 F.2d 347, 352 (2d Cir. 1981); see Plastique Tags, Inc. v. Asia Trans Line, Inc., 83 F.3d 1367, 1370 (11th Cir. 1996).

Daewoo also contends that RTW and Wice are bound by the weight listed on the bills of lading. Daewoo claims that the carriers should have verified the information by weighing the containers on public scales in Hong Kong. If they had, Daewoo argues, they would have discovered that the weight information provided by Hang Fung was incorrect. Daewoo contends that the weight differential would have put the carriers on notice that the shipment was not as described; the carriers would then have been obligated to break the seals to inspect the contents of the containers. Daewoo argues that if the carriers had done so, they would have discovered the substituted cement blocks.6

Unlike the contents of a sealed container, the weight of a container is usually "readily verifiable." See S 1303(c). A bill of lading, then, is prima facie proof that the carrier received that weight from the shipper. Bally, 22 F.3d at 69. This holds true regardless of limiting language, such as "said to weigh" and "shipper's load and count." Id. For this reason, carriers have been held liable in cases involving a shortage of cargo where the actual weight of cargo at outturn was

_____

6. Daewoo concedes that the containers held cement blocks even before they were delivered to RTW and Wice.

7

less than the weight listed on the bill of lading. See Westway Coffee Corp., 675 F.2d at 31–32, 33.

Although the weight of a container can be a signal that there is a shortage of cargo, weight is not logically related to whether cargo is in "good condition" when there has been a substitution. Had RTW and Wice weighed the cargo upon receipt, the weight differential would not have revealed the condition of the goods inside. Nor has Daewoo presented any evidence of the weight of the correct quantity of tape holders. Indeed, had Hang Fung weighed the containers and provided the actual weight of the cement blocks, there would have been no weight differential at all.

The only way that the carriers could have discovered the substitution was if they had broken the seals on the containers. We conclude, however, that, absent notice that something was amiss, the carriers did not have an independent duty to break the seals. Instead, Daewoo, the owner and consignee, was better positioned to prevent the loss. For instance, it could have instructed the carriers to break the seals for inspection at loading, or it could have designated a representative to be present when the containers were loaded. Daewoo could also have required the bank to withhold payment for thirty days after delivery or until the containers had been inspected. Consequently, Daewoo has failed to establish its prima facie case.

We note, moreover, that, even if the common carriers should have been held responsible for the contents of the containers on receipt, Daewoo did not inspect the containers when they were delivered to determine if cargo was missing or damaged. Some containers were not opened until weeks after delivery. Nor did Daewoo give timely notice of the missing cargo to the carriers as required by S 1303(6).

Because Daewoo presented no evidence that the cargo was lost while in the carriers' possession, it cannot recover from RTW and Wice for its loss.[7]

---

7. We decline to reach Daewoo's estoppel argument.

III. CONCLUSION

For the reasons stated above, we will affirm the decision of the District Court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

9